FILED'06 OCT 26 09:33USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DUSTIN VADE MILLER,            )
                               )   Civil No. 05-267-PA
        Petitioner,            )
                               )
    v.                         )
                               )
SHARON BLACKETTER,             )
                               )   OPINION AND ORDER
        Respondent.            )

Patrick J. Ehlers
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Hardy Myers
Attorney General
Lester R. Huntsinger
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

///

1 - OPINION AND ORDER

PANNER, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he challenges his state convictions for Robbery in the Second Degree, Assaulting a Public Safety Officer, and Resisting Arrest on the basis that the trial court allegedly violated his Sixth Amendment right to counsel of his choice. For the reasons which follow, the Petition for Writ of Habeas Corpus (#2) is denied.

## BACKGROUND

Between June 25, 2003 and July 3, 2003, petitioner robbed several small retail establishments in Lane County. When confronted by law enforcement officials, he resisted arrest and injured a police officer. As a result, petitioner was indicted on five counts of Robbery in the Second Degree, and one count each of Assaulting a Public Safety Officer and Resisting Arrest. Respondent's Exhibits 101 & 102.

On September 18, petitioner was scheduled to begin his trial with appointed counsel, Ms. Augur. However, that morning, counsel moved to withdraw based on a telephone message left for her by petitioner the previous night between 6:00 p.m. and 7:00 p.m. which indicated that petitioner "was absolutely not comfortable with [her] representing him and that he did want a new lawyer . . . ." Respondent's Exhibit 103, p. 3. Counsel informed the court that she had spoken with petitioner's father after arriving at the

2 - OPINION AND ORDER

courthouse, and the father had indicated that he was willing and able to retain a private attorney to handle his son's defense. Id.

In response, the prosecutor explained, "The state is ready to go. We have all our witnesses upstairs. All the business people had to take time off from work from their lives to be here. I have all of my officers here, some of them with great effort pulling them off trainings where they have been." Id at 6. She further noted that the case had already been postponed once at the request of the defense, and asked the court to deny the motion to withdraw/postpone.

> Petitioner's attorney countered with the following:
>
> The basis of my motion [to withdraw] is that [petitioner] has indicated that he has no confidence in me. He is unwilling to communicate with me further about this case.
>
> I can't effectively represent a client at trial who is not willing to communicate with me. I feel I am going to be violating DR 2[-]110 if I continue to represent him.
>
> As I read it, I am required to withdraw where he is discharging me, especially where he has the ability now to hire new counsel because his father has stepped in and this morning informed me that he is able to and will hire counsel. He has already attempted to call one local lawyer. The lawyer wasn't in his office and wouldn't be in until after lunch. The person he named is very competent and would probably be ready to try the case within a month.

Id at 7-8.

The court allowed petitioner to personally address the court, and petitioner advised that counsel had not met with him until 48 hours prior to the start of trial, causing him to feel "completely in the dark," and improperly represented. Id at 9. Petitioner

3 - OPINION AND ORDER

indicated that "verbatim she told me she had no defense prepared for me. This was yesterday, that she thought I was going to lose." Id at 11. Petitioner also indicated that he had not yet been able to tell counsel the names of the witnesses he thought should be called on his behalf at trial. Id at 16.

The court also allowed petitioner's father to personally address the court. Petitioner's father focused on the "totally ridiculous amount of time" petitioner faced if convicted, and advised the court that he would prefer to have the representation of an attorney whom he knew personally. Id at 12. The court responded, "You know, you should have done this a long time ago instead [of] the morning of trial." Id at 13.

Following these exchanges, court-appointed counsel informed the court as follows:

> [B]ased on what I have just heard I am even more convinced that the two of us cannot work together and that there is a serious difference in how we understand the representation has been occurring. I think this difference is so huge that even if it weren't for [petitioner's] attitude toward me it would be very difficult for me to continue on the case having heard further.

Id at 16.

> The court ruled as follows:
>
> It is the feeling off the Court that the Court should not encourage criminal defendants to fire their lawyer or attempt to get out of their lawyer or try to find a new lawyer at the last moment.
>
> * * *
>
> I am going to deny the motion to postpone.

4 - OPINION AND ORDER

> I am going to deny the motion to allow withdrawal of the public defender in this case.
>
> We will go to trial. However, we will only today hear the pretrial motions on this matter and select a jury. We will not hear opening statements nor take any evidence today and we will not resume trial until Tuesday morning. That will give Ms. Augur tomorrow, Saturday, Sunday, Monday to do anything that this defendant wants.
>
> I'm going to suggest to this defendant that he better start talking to his lawyer and he better tell her what witnesses he wants interviewed and called and better start doing it immediately, because if he doesn't then he better hold his peace, because if there is something you want Ms. Augur to do you best tell her and tell her promptly today, but we are going to go to trial in this matter and [the] Court is very concerned when we have incarcerated defendants that come in at the last minute to attempt to get a new lawyer and the lawyer, highly competent lawyer and who has adequately prepared this case at least in accordance with documents filed in court thus far, and I am denying the motions.
>
> * * *
>
> It is my anticipation we would use this afternoon to select a jury but because of the nature of the situation involving the defendant and what he has stated, I do not intend to hear any opening statement or commence taking any testimony or evidence.
>
> This should give [petitioner] and his attorney plenty of time to discuss what they want to do on this case.
>
> Also I intend to be extremely liberal in allowing Ms. Augur to present any evidence that she so desires in defense of this defendant regardless of whether or not she has supplied the names or the information to you in discovery.

Id at 18-20.

The following week, pursuant to negotiations, petitioner agreed to proceed with a stipulated facts trial in exchange for the State's promise to recommend no more than a 210-month sentence. Id

5 - OPINION AND ORDER

at 164. Petitioner was ultimately found guilty on all counts and sentenced to 210 months in prison.

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed the trial court without opinion, and the Oregon Supreme Court denied review. State v. Miller, 171 Or. App. 334, 14 P.3d 101 (2000), rev. denied, 332 Or. 137, 27 P.3d 1043 (2001).

Petitioner next filed for post-conviction relief ("PCR"), but the PCR trial court denied the petition in its entirety. The Oregon Court of Appeals affirmed the lower court without opinion, and the Oregon Supreme Court denied review. Miller v. Santos, 196 Or. App. 353, 103 P.3d 1211 (2004), rev. denied, 338 Or. 124, 108 P.3d 1173 (2005).

On February 5, 2005, petitioner filed his Petition for Writ of Habeas Corpus raising seven grounds for relief. Because those claims are adequately stated in the Petition and the State's Response, they need not be reiterated here. Respondent asks the court to deny relief because: (1) most of the claims raised in the Petition are not argued in petitioner's briefs; and (2) the argued claims lack merit.

## DISCUSSION

### I. Abandoned Claims.

In his Petition for Writ of Habeas Corpus, petitioner raises seven grounds for relief. Petitioner chooses only to support the

6 - OPINION AND ORDER

following issues with briefing: (1) whether the trial court erred when it granted petitioner's motion for a continuance; and (2) whether the trial court erred when it denied counsel's motion to withdraw. He "seeks relief on these claims and chooses not to pursue the remaining claims raised in the *pro se* petition." Memo in Support (#38), p. 3. Accordingly, the unargued claims are dismissed.

II. **Grounds One and Two: Denial of Motion to Withdraw and Motion for Continuance**.

    A. **Standard of Review**.

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court

7 - OPINION AND ORDER

and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id at 410. The state court's application of clearly established law must be objectively unreasonable. Id at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still defers to the state court's ultimate decision. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

**B. Analysis.**

Petitioner argues that the trial court's denial of his motions for withdrawal and continuance violated his Sixth Amendment right to be represented by an attorney of his choosing. The Supreme Court has long recognized that criminal defendants who have the means to hire their own attorneys have a Sixth Amendment right to

8 - OPINION AND ORDER

counsel of their choice.  United States v. Gonzalez-Lopez, 126 S.Ct. 2557, 2561 (2006); Wheat v. United States, 486 U.S. 153, 159 (1988); Cf. Powell v. Alabama, 287 U.S. 45, 53 (1932) ("a defendant should be afforded a fair opportunity to secure counsel of his own choice"). Where a criminal defendant with means to retain his own attorney has been deprived of the attorney of his choice, "[n]o additional showing of prejudice is required to make the violation 'complete'" because the right to select one's own counsel does not derive from the Sixth Amendment's purpose of ensuring a fair trial. Gonzalez-Lopez, 126 S.Ct. at 2562-63.

It is clear that a criminal defendant has the right to retain the attorney of his choice, but the issue in this case is made more complex by its unique factual background: whether a criminal defendant is entitled to assert his Sixth Amendment right to counsel of his choice where he has accepted appointed counsel, has been granted a continuance with appointed counsel, and seeks to invoke his right to retained counsel only on the morning set for trial. Under these facts, petitioner may have waived his right to retain counsel of his choice. Even assuming petitioner did not waive his right to counsel of his choice, he has not identified, and the court is unable to find, any Supreme Court precedent which would have required the Oregon state courts to hold in his favor on his Sixth Amendment claim given the unique posture of this case.

9 - OPINION AND ORDER

Petitioner also argues that the trial court violated his Sixth Amendment right to counsel when it did "virtually nothing" to inquire into the breakdown of the attorney-client relationship. To the contrary, the trial court did inquire into the relationship between petitioner and Ms. Augur, and discerned that petitioner was principally unhappy because he did not believe counsel was prepared to put on an adequate defense by calling witnesses petitioner believed could testify meaningfully on his behalf. Petitioner's primary complaint appeared to be that he and Ms. Augur had not spent sufficient time together.

The trial court also inquired as to the father's concerns, which explain the timeline of events in this case. It appears that the entire matter of substitution of counsel arose when, on the eve of trial, petitioner's father realized for the first time that his son faced the possibility of a severe sentence under Oregon's mandatory minimum sentencing law. Respondent's Exhibit 103, p. 13. Only then did petitioner's father offer to hire a private attorney for him. This, in turn, prompted petitioner to call Ms. Augur between 6:00 p.m. and 7:00 p.m. to ask her to withdraw.

After conducting its inquiry into the relationship between petitioner and Ms. Augur, the trial court postponed the beginning of the trial for three full days to allow petitioner an opportunity to advise his attorney which witnesses he wished her to call, and agreed to "bend the procedural rules" on petitioner's behalf with

10 - OPINION AND ORDER

respect to the introduction of his evidence. Respondent's Exhibit 103, p. 22. The trial judge did not believe that there was a total breakdown of communication, only that there had been insufficient communication regarding the case. There is no indication in the record that the judge's remedial measures to move opening argument in the case from Friday to the following Tuesday, and to bend the procedural rules in petitioner's favor, failed to cure any communication problem between counsel and petitioner.

Indeed, following the court's decision to deny petitioner's request for substitute counsel and a continuance, petitioner's father told the trial judge, "I have no problem with your ruling. It's good enough and fair enough. I am quite sure Ms. Augur will do as good a job as anyone can do." Respondent's Exhibit 103, p. 22. Such a response supports neither petitioner's claim that he suffered from a complete breakdown in the attorney-client relationship, nor an argument that the judge's remedial measures were insufficient to resolve the problems which had arisen.

Upon this record, the court concludes that the trial court conducted a meaningful inquiry into the communication problems petitioner and his attorney experienced, and worked diligently to resolve these problems. However, even if this were not the case, the court would be left to determine whether any deterioration in the attorney-client relationship resulted in a total lack of communication preventing an adequate defense. According to the

11 - OPINION AND ORDER

Ninth Circuit's opinion in <u>Schell v. Witek</u>, 218 F.3d 1017, 1026 (9th Cir. 2000), "the basic question is simply whether the conflict between [counsel and client] prevented effective assistance of counsel."

Petitioner has not presented any evidence to this court which proves that the assistance he received from Ms. Augur fell below an objective standard of reasonableness, nor has he attempted to demonstrate prejudice. <u>Strickland v. Washington</u>, 466 U.S. 668, 686-687 (1984). Accordingly, after conducting an independent review of the record, the Oregon state court decisions are not based on an unreasonable determination of the facts in light of the evidence presented, and are neither contrary to, nor unreasonable applications of, clearly established federal law as determined by the U.S. Supreme Court. The Petition is therefore denied.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is DENIED, and this case is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 25 day of October, 2006.

_____
Owen M. Panner
United States District Judge

12 - OPINION AND ORDER